IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Graham-White Manufacturing Co., a Virginia Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6:05-0396-WMC |
| vs. | ) ) ) | **O R D E R** |
| Ellcon-National, Inc., a New York Corporation, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Graham-White Manufacturing Co. ("Graham-White") alleges that defendant Ellcon-National, Inc. ("Ellcon") infringes U.S. Patent 6,427,811 ('811 patent). Ellcon has asserted counterclaims for declaratory judgment for noninfringement and patent invalidity. The '811 patent describes and claims a locomotive parking brake. The patented invention is capable of setting and releasing a parking brake without requiring manual readjustment of the gears.

The case was referred to this court for disposition on November 20, 2007, pursuant to Title 28, United States Code, Section 636(c), Federal Rule of Civil Procedure 73, and Local Rule 73.01(B), DSC, by order of the Honorable Henry F. Floyd, United States District Judge.

In accordance with the Federal Circuit's decision in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996), the court has received and considered briefs filed by the parties on what each argues is the proper legal interpretation of the asserted claims (1, 2, 3, 5, and 6) of the '811 patent. Claims 2, 3, 5, and 6 depend from independent Claim 1. On November 30, 2007, the court held a hearing on the matter during which the respective sides argued their positions.

Terms in a patent claim are, to the extent possible, to be given their ordinary and customary meaning as known to a person of ordinary skill in the art as of the effective filing date of the patent application.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13.  This ordinary meaning is not determined in the abstract, but must be ascertained "in the context of the entire patent."  *Id.* at 1313.  In addition to intrinsic evidence (*i.e.*, the patent and its prosecution history), courts may also consider extrinsic evidence, such as dictionaries, treatises, and testimony, in construing patent claims.  *Id.* at 1317-18.  Extrinsic evidence may be useful "to educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean."  *Id.* at 1319.  A court can use any source of information to help it analyze a patent's claims "as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.* at 1324.  Because extrinsic evidence is generally "less reliable than the patent and its prosecution history," it is "'less significant than the intrinsic record [*i.e.*, the patent and file history] in determining the legally operative meaning of claim language.'"  *Id.* at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

Patent applicants have the option to draft claims using statements of function without indicating within the claim the specific structure for performing that function.  35 U.S.C. § 112 ¶ 6.  Specifically, the patent statute provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

*Id.*  Thus, the statute "operates to restrict claim limitations drafted in such functional language to those structures, materials, or acts disclosed in the specification (and their equivalents) that perform the claimed function." *Personalized Media Commn'cs, LLC v. Int'l*

2

*Trade Com'n*, 161 F.3d 696, 703 (Fed. Cir. 1998). When trying to determine if a particular claim should be interpreted as a means-plus-function claim, the use of the word "means" in the claim gives rise to a presumption that the term is in means-plus-function format and section 112 ¶ 6 generally applies. "However, a limitation that uses the word 'means' but does not recite a function that corresponds to the means does not invoke § 112, ¶ 6." *Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*, 239 F.3d 1225, 1232 (Fed. Cir. 2001). "Likewise, even when a limitation does recite a function, if it also recites sufficiently definite structure for performing that function, then § 112, ¶ 6 does not apply." *Id.* Conversely, when a claim term does not use the word "means," a presumption is triggered that it is not in means-plus-function format, and section 112, ¶ 6 does not generally apply. Each of the above presumptions is rebuttable. *Personalized Media,* 161 F.3d at 703-04. In determining whether the presumption is rebutted, "the focus remains on whether the claim as properly construed recites sufficiently definite structure to avoid the ambit of § 112 ¶ 6." *Id.* at 704.

"Once a court concludes that a claim limitation is a means-plus-function limitation, two steps of claim construction remain: 1) the court must first identify the function of the claim limitation; and 2) then look to the specification and identify the corresponding structure for that function." *Biomedino, LLC v. Waters Techs. Corp*., 490 F.3d 946, 950 (Fed. Cir. 2007). The claim is limited "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6.

During the *Markman* hearing, the parties indicated that they could agree to the construction of previously disputed terms (other than for the term "actuating mechanism") in Claims 2, 5, and 6. Accordingly, the court will interpret only those disputed terms in Claims 1 and 3. Based upon the foregoing law and consideration of the briefs and arguments of the parties during the *Markman* hearing, the court construes the disputed terms as set forth below.

*Claim 1*

Claim 1 provides as follows:

1.    A power driven brake system for a locomotive, comprising

(a) a wheel braking device capable of applying direct force to prevent rotation of a locomotive wheel and thereby set a brake;

(b) an actuating mechanism for setting and releasing the wheel braking device, the actuating mechanism being capable of operating in a first mode to set the brake and in a second mode to release the brake, said mechanism further comprising:

i) motor,
ii) a clutch,
iii) a gearing means; and
iv) an electronic control system;

(c) a linking means, the linking means operably connecting the wheel braking device with the actuating mechanism to facilitate setting and releasing the wheel braking device; and

(d) wherein the actuating mechanism is capable of electronically switching between the first mode and the second mode to set and release the brake without manual re-adjustment of the gearing means.

The disputed terms and the court's construction thereof are as follows:

• *"actuating mechanism for setting and releasing the wheel braking device, the actuating mechanism being capable of operating in a first mode to set the brake and in a second mode to release the brake"*

This court finds that a means-plus-function analysis of this phrase is unnecessary. The phrase is construed as follows: a component of the brake system that may operate in a first mode to set the brake and in a second mode to release the brake.

• *"said mechanism further comprising"*

the mechanism further includes

4

- *"motor"*

    a machine that imparts motion

- *"clutch"*

    a releasable coupling between a driven shaft and a driving shaft

- *"gearing means"*

    interengaged gears

- *"an electronic control system"*

    an electronic circuit that controls the brake system

- *"A linking means, the linking means operably connecting the wheel braking device with the actuating mechanism to facilitate setting and releasing the wheel braking device"*

    a chain or shaft that connects the wheel braking device with the actuating mechanism

- *"Wherein the actuating mechanism is capable of electronically switching between the first mode and the second mode to set and release the brake without manual readjustment of the gearing means"*

    whereby the actuating mechanism can electrically set the wheel brake device and then electrically release the brake device, or vice versa, without having to manually reset the gearing means

### Claim 3

Claim 3 provides as follows: "The system of Claim 1 in which the *actuating mechanism is operated remotely by sending signals from a communication device*." Graham-White contends that the italicized phrase should be construed as "the actuating mechanism receives signals from a communication device that is not in contact with the actuating mechanism." Ellcon argues that Claim 3 is limited to wireless remote control. This court agrees with Graham-White's construction and therefore construes the phrase as

5

follows: the actuating mechanism receives signals from a communication device that is not in contact with the actuating mechanism.

### CONCLUSION

Wherefore, based upon the foregoing, the disputed terms of the '811 patent are construed as set forth above. Should the parties agree to a different construction of any of the foregoing terms, they may so notify the court within three days of the date of this order.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

December 4, 2007

Greenville, South Carolina